**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **BRIDGET NAMONDO MBOME,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00597-O |
| § | |
| **HENRY NJIE et al,** § | |
| § | |
| Defendants. § | |

**ORDER DENYING MOTION TO DISMISS**

Before the Court are Defendants' Motion to Dismiss, ECF No. 14, filed September 12, 2018; Plaintiff Bridget Mbome's Response, ECF No. 16, filed October 2, 2018; Defendants' Reply, ECF No. 17, filed October 17, 2018; and Mbome's Sur-Reply, ECF No. 18, filed October 31, 2018. Having reviewed the motion, briefing, and applicable law, the Court finds the Motion to Dismiss, ECF No. 14, should be and is hereby **DENIED**.

**I.    BACKGROUND[1]**

Bridget Namondo Mbome is a 72-year-old citizen of Cameroon who "never received any formal education, cannot read or write, and speaks very little English." Compl. 2–3, at ¶¶ 8 and 14, ECF No. 1. Mbome alleges that, "[a]round 2008, Defendant Mary Mbella, approached her about working for Defendants Henry and Emilia Njie as a housekeeper and nanny in the United States." *Id.* at ¶ 17. "Defendant Emilia Njie is Defendant Mbella's daughter. Defendants Henry and Emilia Njie are married." *Id.*

---

[1] This summary of facts is taken from the Complaint. *See* ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Mbome. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002) ("Because we review here a decision granting respondent's motion to dismiss, we must accept as true all of the factual allegations contained in the complaint.").

When Mbome told Defendant Mbella she was interested in the job, Mbella offered to help Mbome through the visa process. *Id.* at ¶¶ 19–20. Mbome alleges she "was unfamiliar with the visa process and requirements." *Id.* at ¶ 20. With Mbella's help, Mbome received a B1/B2 visa. *Id.* at ¶27. Before leaving Cameroon, "Mbome asked Ms. Mbella how she would be paid by Defendants for her work" and "Mbella instructed Ms. Mbome that she should never raise the question of compensation with the Njies because Mr. Njie knew what he intended to pay her." *Id.* at ¶ 28. "Mbella also informed Ms. Mbome that if Mr. Njie mentioned the topic of compensation, Ms. Mbome should not respond." *Id.* Mbome alleges "Mbella coordinated with Mr. and Mrs. Njie regarding this instruction, the nature of the arrangement, and other material aspects regarding Ms. Mbome's travel to the United States." *Id.* at ¶ 29. Mbome also alleges that she "was used to negotiating her wages upfront" but "trusted Ms. Mbella and continued to believe that she would be fairly compensated." *Id.* at ¶ 30. "Because of her conversation with Ms. Mbella, Ms. Mbome understood that her expectation that she would be paid was clear to Defendants. Ms. Mbome believed that Defendants would pay her for her work and would not have accepted the job if she believed otherwise." *Id.*

Once in Texas, Mbome alleges she "typically worked for [Defendants] seven days a week for approximately 14.5 hours on weekdays and 13 hours on weekends." *Id.* at ¶ 33. The services Mbome allegedly rendered Defendants "included housekeeping, laundry, ironing, making the beds, cleaning the floors, taking out the trash, preparing and cooking all meals, providing for any house guests, and caring for the children, including bathing them, feeding them, preparing them for school, and putting them to bed." *Id.* at ¶ 34. Mbome states in her Complaint that she attempted to follow Defendants' instructions and that Defendants would become angry if they were unsatisfied with Mbome's services. *See id.* at ¶¶ 35–36.

Mbome was dependent on Defendants while she worked for them. She relied on them to go to church, to visit family, and for "basic personal care items, like soap and other toiletries." *Id.* at ¶ 38. Sometimes, Mbome alleges, Defendants denied Mbome the care items she requested and needed. *Id.* "Mbome did not receive routine healthcare—despite being diagnosed with hypertension and experiencing occasional chest pains—and never had a sick day off work." *Id.* at ¶ 41. While Mbome worked for Defendants, "Mrs. Njie demanded that Ms. Mbome hand over her visa and passport" and "represented that the Njies were completing the necessary process to extend Ms. Mbome's visa." *Id.* at ¶ 43. "Mbome trusted and relied upon Mrs. Njie's representation and gave her all of her travel documents. The Njies retained those documents for nearly all of the next eight years." *Id.* Mbome alleges that when she "asked the Njies . . . about getting her documents renewed, the Njies told her there was no way to get them renewed and that she could not travel anymore." *Id.* at ¶ 47. Mbome claims Defendants "intentionally failed to renew [her] documents" and did so "to further restrict her movements because [Defendants] knew that Ms. Mbome could not travel with expired documents and could easily be deported." *Id.* at ¶ 48.

Mbome asserts Defendants "benefited from [her] labor in that they received childcare and housecleaning services at no cost," and she claims her services allowed Mrs. Njie "to attend and complete nursing school and obtain gainful employment in the nursing field." *Id.* at ¶ 39. "Mbome performed these services based on the initial request by Ms. Mbella." *Id.* Mbome also alleges Defendant "Mbella received the benefit of Ms. Mbome's housecleaning and cooking services" when Mbella "travelled to the United States to visit with the Njies." *Id.*

Mbome allegedly worked for Defendants "for eight years without compensation." *Id.* at ¶ 40. During this time, "Mbome heeded Ms. Mbella's warning to never raise the terms of her compensation with the Njies and relied on Ms. Mbella's assurance that Defendants intended to pay

3

her." *Id.* at ¶ 42. In her Complaint, Mbome asserts that, "[d]espite knowing that they were legally obligated to pay Ms. Mbome for her services, Defendants never explained to Ms. Mbome any details regarding requirements that domestic workers like Ms. Mbome are to be paid a minimum wage, nor did they post or provide Ms. Mbome with such information during or after her employment with them." *Id.* She also alleges "Defendants took these steps to willfully mislead [her] regarding her rights." *Id.* In addition, Mbome alleges that she once asked Mr. Njie to obtain "paperwork relating to her plot of land during one of his regular trips to Cameroon" and "to look over the property for her," but that "[t]o date, Mr. Njie has never returned the paperwork for Ms. Mbome's land in Cameroon and has provided no information about the status of that land." *Id.* at ¶¶ 51–52.

"In or around October 2015," Mbome avers, Defendants "told Ms. Mbome they no longer needed her services and that it was time for her to leave their home." *Id.* at ¶ 53. Defendants "explained to Ms. Mbome that they had built a house in Cameroon for her to live in when she returned." *Id.* at ¶ 54. At first, "Mbome believed the house . . . was on her land in Cameroon" because "Mbome knew that Mr. Njie still had the documents for her land." *Id.* at ¶ 55. When Mbome asked about the house, Defendants provided no details and instead showed Mbome a picture on a cell phone. *Id.* at ¶ 56. "Mbome later learned from her nephew that the house was built on the Njies' land in Cameroon so they could take the house back when Ms. Mbome died." *Id.* at ¶ 58. Mbome asked Mr. Njie about this house and her property, but Mr. Njie became angry. *Id.* at ¶ 59.

Mbome allegedly then "told the Njies that she wanted to be paid monetarily for her years of service" but "the Njies attempted to convince Ms. Mbome to accept the house by claiming she was owed, at best, $96,000 for her eight years of service . . . which was allegedly less than the

4

value of the house in Cameroon." *Id.* at ¶ 60. "Although she had been expressly warned by Ms. Mbella not to discuss the terms of her payment, Ms. Mbome . . . attempted to negotiate with Defendants by agreeing to accept a monetary payment of $75,000." *Id.* at ¶ 61. Mbome alleges that after this exchange, Defendants "verbally abused" her. *Id.* Defendants also allegedly "countered Ms. Mbome's request to be paid monetarily by stating that any monetary amount paid would need to be reduced by the sum of Ms. Mbome's living expenses and other costs over the course of her time working for them." *Id.* at ¶ 63.

"In or around May 2016, Mrs. Njie told Ms. Mbome that she had better be gone from the Njies' home before Mr. Njie returned from an ongoing trip to Cameroon." *Id.* at ¶ 64. And when "Mbome tried to insist otherwise, Mrs. Njie and Ms. Mbella told Ms. Mbome she would see what would happen to her if she did not leave the house." *Id.* at ¶ 65. Yet Mbome "still hoped to obtain payment for her services." *Id.* at ¶ 66.

Nevertheless, Defendant Mrs. Njie put Mbome "on a three-day, one-way bus journey from Texas to Maryland by herself." *Id.* Defendant Mrs. Njie then "told Ms. Mbome that [Mrs. Njie] was giving her $5,000" and "demanded that Ms. Mbome sign a document written by the Njies" that "purported to release the Njies from all legal responsibility for Ms. Mbome regarding her 'stay' in the United States." *Id.* at ¶ 67. Mbome alleges Mrs. Njie would not give Mbome the money until Mbome signed the document, and she further alleges the document was "an implicit acknowledgement of their legal responsibility for her presence in the United States." *Id.* "[U]nder intense pressure from Mrs. Njie and in need of whatever cash she could get, Ms. Mbome signed the document even though she could not read the statement." *Id.*

Mbome brought this suit against the Defendants, claiming violations of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1589; conspiracy to violate the

TVPRA; violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et. seq.; violations of the Texas Civil Practice and Remedies Code's imposition of liability for trafficking of persons, TEX. CIV. PRAC. & REM. CODE §§ 98.001, 98.002; fraud; theft of services, TEX. PENAL CODE § 31.04; breach of implied contract, and quantum meruit. *See* Compl. 16–27, ECF No. 1. Defendants move to dismiss on the ground that each claim is time-barred. *See* Br. Supp. Mot. Dismiss, ECF No. 15.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court may not accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). A "statute of limitations is an affirmative defense that 'places the burden of proof on the party pleading it.'" *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011) (quoting *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 320 (5th Cir. 2004)) (en banc). But "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." *Id.* at 239–40 (citations omitted). So, "a complaint may be subject to dismissal" only if the "allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Id.* at 240 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

7

### III. APPLICATION

Defendants move to dismiss only on the ground that each of Mbome's claims is time-barred. *See* Defs.' Mot. Dismiss, ECF No. 14. Courts regularly emphasize that the affirmative defense of an expired limitations period is better addressed at the summary-judgment stage, where the court can assess the facts and evidence necessary for resolving accrual and expirations disputes. This means Defendants face a heavy burden at the dismissal stage. *See Frame*, 657 F.3d at 239 (noting "the statute of limitations is an affirmative defense that places the burden of proof on the party pleading it" (cleaned up)). Defendants must show both that Mbome's allegations "affirmatively demonstrate" her claims are barred *and* that Mbome fails "to raise *some* basis for tolling." *Id.* at 240 (emphasis added). At the pleading stage, Mbome has no obligation to allege that her "claims were filed within the applicable statute of limitations." *Id.* at 239–40.

As discussed below, the Court finds Defendants are unable to carry their burden at the 12(b)(6) stage. Defendants' arguments are largely conclusory and Defendants cite only five cases in their short motion to dismiss Mbome's eleven claims—only one case is cited to guide the Court in determining an applicable accrual date. *See* Defs.' Br. Supp. Mot. Dismiss 5, ECF No. 15. In short, Defendants fail to show that Mbome's allegations "affirmatively demonstrate" her claims for willful violations of the FLSA, fraud, theft of services, breach of contract, and quantum meruit are barred because, accepting the allegations as true, those causes of action did not accrue until, at the earliest, approximately May 2016. *See* Compl. 13, at ¶ 64, ECF No. 1. And Defendants do not show that Mbome failed to raise "some basis" for tolling her federal and state trafficking claims.

#### A. The FLSA, Fraud, Theft-of-Services, Contract, and Quantum-Meruit Claims

Taken as true and in the light most favorable to Mbome, the allegations in the Complaint support Mbome's argument that her FLSA, fraud, theft-of-services, contract, and quantum-meruit

claims accrued, at the earliest, on or after October 2015. Put differently, the allegations do not affirmatively demonstrate that these claims are untimely. *See Frame*, 657 F.3d at 240.

        1.      The FLSA Claim

Defendants argue Mbome's FLSA claim is subject to a two-year limitations period that prevents Mbome from recovering any alleged unpaid wages "earned prior to July 20, 2016." Br. Supp. Mot. Dismiss 2–3, ECF No. 15. Mbome responds that her FLSA claim is subject to a three-year limitations period because she pleaded a "willful" violation. *See* Pl.'s Resp. Mot. Dismiss 6, ECF No. 16 (citing 29 U.S.C. § 255(a)). Mbome then argues that her claim for wages earned between July 20, 2015 and July 20, 2018 is timely and that her claim for wages earned before July 20, 2015 should be equitably tolled because "Defendants failed to post the required FLSA notices in their home." *Id.* at 7–8.

"Absent unusual circumstances . . . accrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Frame*, 657 F.3d at 238 (footnotes and citations omitted). "In other words, accrual occurs 'the moment the plaintiff becomes aware that [s]he has suffered an injury or has sufficient information to know that [s]he has been injured.'" *Id.* (footnotes and citations omitted); *see also Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) ("Under federal law, a cause of action arises when the plaintiff knows or has reason to know of the injury which is the basis of the action." (cleaned up)). For FLSA claims, the Fifth Circuit has held "[a] cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.), *opinion modified on reh'g*, 826 F.2d 2 (5th Cir. 1987). This makes sense because an employee would typically become aware the he or she has suffered an FLSA injury on payday.

9

The "payday rule" may presuppose regularly recurring pay periods, which is slightly different than the picture Mbome paints. She argues that she and Defendants anticipated only one pay period and one payday. *See* Pl.'s Resp. Mot. Dismiss 12, ECF No. 16 ("As explained above, Ms. Mbome and Defendants always understood that Ms. Mbome would be compensated for her services upon the completion of her work with the Njies." (citing Compl. ¶¶ 53, 60–61, 141–43, ECF No. 1)). If the Court were to strictly apply the payday rule to Mbome's pleadings, the accrual date of Mbome's FLSA claim would likely be sometime in May 2016—the "payday" when Defendant Mrs. Njie paid Mbome $5,000 and kicked her out of the Njie home. *See* Compl. ¶¶ 53–67, ECF No. 1. If the Court were to instead rely on the Fifth Circuit's more general accrual principles—i.e., when Mbome became aware that she had suffered an injury—Mbome's FLSA accrual date would likely be sometime in October 2015—when Mbome and Defendants first discussed the terms of Mbome's payout. *Id. See Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir. 1993) ("The focus is on what event in fairness and logic should have alerted the average lay person to act to protect [her] rights." (citation omitted)). The Court need not decide between these two dates, however, because Mbome's FLSA claim would be timely even if it accrued on the earlier of the two dates, in October 2015.

Importantly, Mbome alleges Defendants willfully violated the FLSA. *See, e.g.*, Compl. ¶¶ 33, 40, 42, 118, ECF No. 1; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (holding that the standard for a willful violation that would trigger the three-year limitations period is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"). This allows the Court to consider the FLSA's three-year limitations period in deciding Defendants' affirmative-defense dismissal arguments. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation may be commenced within three

years after the cause of action accrued."). Because Mbome filed her Complaint on July 20, 2018, her FLSA claim is not subject to dismissal unless Mbome's allegations "affirmatively demonstrate" that her FLSA claim accrued before July 20, 2015. They do not. To the contrary, as discussed above, Mbome's allegations raise a plausible inference that her FLSA claim accrued no earlier than October 2015. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's FLSA claim.

        2.     The Texas Tort Claims

Defendants argue Mbome's fraud claim is subject to a four-year limitations period under Texas Civil Practice and Remedies Code § 16.004(a)(4) and is untimely because it "accrued sometime 'prior to [Mbome's] arrival in the United States.'" Defs.' Br. Supp. Mot. Dismiss 3, ECF No. 15. The theft-of-services claim is subject to Texas's "residual four-year limitations period," argue Defendants, and is therefore untimely because the "alleged 'deception, threat or false token' occurred before [Mbome] came to the United States, meaning it happened sometime before April 29, 2008." *Id.* at 4. Finally, Defendants contend the contract and quantum-meruit claims are barred by their respective four-year limitations periods because the alleged breach "occurred . . . immediately upon [Mbome's] arrival in the United States in April of 2008." *Id.* at 5.

Mbome contends her fraud claim is covered by the five-year limitations period set by Texas Civil Practice and Remedies Code § 16.0045(b)(3) because the claim "is a cause of action for personal injury arising as the result of her trafficking claims." Pl.'s Resp. Mot. Dismiss 8, ECF No. 16. And she argues "[t]he Texas Supreme Court has 'long held that fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence might have been discovered.'" *Id.* at 9 (quoting *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015)). The claim is therefore timely, she says, because she "did not discover that

11

Defendants did not intend to pay her as they had promised until a date at some time between October 2015 and May 2016." *Id.* at 10.

Mbome also argues her theft-of-services claim is covered by § 16.0045 because it too relates to the underlying trafficking. *Id.* And she asserts Defendants' theft of her services "did not cause any compensable harm . . . until May 2016 when Defendants refused to pay her"—making May 2016 the accrual date. *Id.* at 11. Finally, Mbome agrees her contract and quantum-meruit claims are subject to their respective four-year statutes of limitations. *Id.* at 11–12. But she asserts the "cause of action for breach of contract could not have accrued sooner than October 2015—the date she first discussed payment for her services with Defendants—and more reasonably, would not have accrued while she was still negotiating with Defendants." *Id.* at 12. And her quantum-meruit claim accrued in May 2016, she says, because that claim is subject to the rule that "when the service provider is to be paid upon completing all services, a claim for quantum meruit . . . accrues on the last date services were provided." *Id.* (quoting *Channel Source Inc. v. CTI Indus. Corp.*, No. 3:15-CV0271, 2015 WL 13118198, at *3 (N.D. Tex. Oct. 26, 2015)).

Texas courts hold that "a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *see also Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977) ("[A] cause of action generally can be said to accrue at the time when facts come into existence which authorize a claimant to seek a judicial remedy."). Unlike federal law, Texas law mandates that "[t]he cause of action generally accrues . . . 'regardless of when the plaintiff learns of th[e] injury.'" *De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 408 (5th Cir. 2016) (citation omitted). But "[i]n fraud cases, . . . the discovery rule delays accrual of the plaintiff's claim until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful

12

act and injury." *United Healthcare Servs., Inc. v. First St. Hosp. LP*, No. 01-17-00237-CV, 2018 WL 6215960, at *8 (Tex. App.—Houston Nov. 29, 2018) (citing *Hooks*, 457 S.W.3d at 57).

Consistent with the analysis above, the allegations in the Complaint support the inference that Mbome, an unsophisticated party, "knew or in the exercise of reasonable diligence should have known" she had been defrauded no earlier than in October 2015. *See* Compl. ¶¶ 53–67, ECF No. 1. That is because it was not until October 2015 that Defendants allegedly "told Ms. Mbome they no longer needed her services" and "explained to Ms. Mbome that they had built a house in Cameroon for her to live in when she returned," suggesting this was the first time Mbome learned Defendants' true intentions regarding the form and amount of her compensation. *Id.* at ¶¶53–54. Mbome argues her fraud claim is covered by the five-year limitations period set forth in Texas Civil Practice and Remedies Code § 16.0045(b)(3). *See* Pl.'s Resp. Mot. Dismiss 8, ECF No. 16. But even if Defendants are correct that the standard four-year limitations period applies, *see* Defs.' Br. Supp. Mot. Dismiss 3, ECF No. 15, Mbome's fraud claim is timely given that the allegations in the Complaint support an accrual date in October 2015 at the earliest and the Complaint was filed July 20, 2018. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's fraud claim.

With respect to the theft-of-services claim, the Court finds Mbome sufficiently pleaded a basis for identifying the day she left Defendants' home in May 2016 as the accrual date. Mbome's theft-of-services claim arises under the Texas Theft Liability Act (TLA), Texas Civil Practice and Remedies Code § 134.001, et seq. *See* Compl. ¶¶ 135–39, ECF No. 1. "For all TLA claims, the plaintiff must establish: (1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Penal Code; and (3) the plaintiff sustained damages as a result

13

of the theft." *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE §§ 134.002(2), 134.003, 134.005(a); Tex. Penal Code §§ 31.03(a), 31.05). Because it was not until May 2016 that Defendants allegedly underpaid Mbome for her of services, the Complaint, taken as true, establishes that the third element of a Texas theft-of-services claim—"the plaintiff sustained damages"—did not arise until May 2016. And because Texas law also holds that "a cause of action can generally be said to accrue when the wrongful act effects an injury," *Moreno*, 787 S.W.2d at 351, the Court finds Mbome sufficiently pleaded that her cause of action for theft of services first accrued in May 2016. As with the fraud claim, Mbome argues Texas's five-year limitations period under § 16.0045(b)(3) applies to her theft-of-services claim. *See* Pl.'s Resp. Mot. Dismiss 10, ECF No. 16. But even assuming the four-year catch-all provision applies as Defendants suggest, *see* Defs.' Br. Supp. Mot. Dismiss 4, ECF No. 15, Mbome's theft-of-services claim is timely given an accrual date of sometime in May 2016 and the filing of the Complaint on July 20, 2018. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's theft-of-services claim.

Finally, the Court finds Mbome's allegations support the inference that her contract and quantum-meruit claims did not accrue until May 2016, when Defendants allegedly failed to pay her fair compensation. Defendants' only argument to the contrary is as follows: "Plaintiff again alleges that she entered into an agreement to be paid for her services, and that Defendants breached those agreements. The breach of those agreements, however, certainly occurred, as alleged in [Mbome's] complaint, immediately upon [Mbome's] arrival in the United States in April of 2008." Defs.' Br. Supp. Mot. Dismiss 5, ECF No. 15. These conclusory assertions, without citation to legal support or the Complaint's allegations, fail to explain how a breach could have occurred "upon [Mbome's] arrival in the United States," before she had begun performance of the services

for which she alleges she was to be paid. And the allegations in the Complaint support the conclusion that "Mbome had an implied-in-fact employment contract with the Njies to provide housekeeping, cooking, and childcare services . . . in exchange for fair compensation," Compl. 26, ECF No. 1, and that Defendants breached their duty to provide fair compensation in May 2016 when "Mrs. Njie hurried Ms. Mbome out of the Njies' home" and paid her $5,000, *id.* at 14.

Taking the allegations in the Complaint as true, this also marks the accrual of Mbome's quantum-meruit claim because Mbome alleges she was to be paid upon completion of her services. *See, e.g.*, Compl. ¶¶ 28–30, 53, 60–61, ECF No. 1. "[W]hen the service provider is to be paid upon completing all services, a claim for quantum meruit on all services rendered accrues on the last date services were provided." *Channel Source Inc.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *3 (citing *Quigley v. Bennett*, 256 S.W.3d 356, 361 (Tex. App.—San Antonio 2008, no pet.)). Mbome alleges she rendered services until May 2016. Compl. ¶ 103, ECF No. 1 ("From approximately April 2008 to May 2016, Ms. Mbome rendered valuable service to the Njies by serving as a live-in nanny, cook, and housekeeper."). The Complaint therefore supports the inference that both the contract claim and the quantum-meruit claim accrued in May 2016, when Mbome alleges she was sent away and underpaid. The parties agree a four-year limitations period applies to each claim. *See* Defs.' Br. Supp. Mot. Dismiss 4–5, ECF No. 15; Pl.'s Resp. Mot. Dismiss 11–12, ECF No. 16. Taking Mbome's allegations as true, both claims are therefore timely based on the Complaint's July 20, 2018 filing date. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's contract and quantum-meruit claims.

    **B.**    **The TVPRA and Texas Trafficking Claims**

Defendants argue Mbome's TVPRA claims are governed by a ten-year limitations period while her Texas trafficking claim is governed by Texas's four-year catch-all provision. *See* Defs.'

Br. Supp. Mot. Dismiss 1–2, ECF No. 15. They then argue all Mbome's trafficking claims are time-barred because they arose, at the latest, when Mbome "claims she came to the United States, on or about April 29, 2008." *Id.* at 1; *id.* at 2 ("Plaintiff's seventh claim for relief arose, at the latest, when Plaintiff claims she came to the United States, on or about April 29, 2008.").

Mbome does not dispute that the TVPRA is subject to a ten-year limitations period, but she argues "[a] plaintiff's TVPRA claims do not accrue until the victim is free from her traffickers' control and able to take legal action." Pl.'s Resp. Mot. Dismiss 3, ECF No. 16 (collecting cases). Mbome then argues that "[a]n express five-year statute of limitations governs [her] Texas trafficking claim." *Id.* at 5 (citing TEX. CIV. PRAC. & REM. CODE § 16.0045(b)(3)). And she asserts that her arguments "with respect to her TVPRA claims apply with equal force to her claim under the Texas Liability for Trafficking of Persons statute"—namely, that the claim did not accrue until she was free of Defendants' home and control. *Id.* Notably, Mbome also argues that, if the Court finds her trafficking claims—or any other claims—are otherwise barred, then those claims should be equitably tolled because "strict application of the statute of limitations would be inequitable." *Id.* at 13 (quoting *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 207 (5th Cir.), *cert. denied*, 138 S. Ct. 134 (2017)). She similarly suggests "the doctrine of fraudulent concealment should toll the statute of limitations on all [her] claims" because she "was victimized by Defendants, who took advantage of her lack of education and great trust in them in order to avoid paying her for eight years of labor." *Id.* at 15. The Court finds the latter two equities arguments militate against granting dismissal under Rule 12(b)(6).

As laid out above, "a complaint may be subject to dismissal if its allegations . . . fail to raise some basis for tolling." *Frame*, 657 F.3d at 240. On the federal side of things, "[c]ourts grant requests for equitable tolling most frequently where 'the plaintiff is actively misled by the

16

defendant about the cause of action or is prevented in some extraordinary way from asserting [her] rights.'" *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000)). And the Fifth Circuit has said "limitation periods may be tolled because of 'the plaintiff's innocence.'" *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1343–44 (5th Cir. 1991) (citation omitted). "Such 'innocence' may render equitable tolling appropriate . . . when fraudulent concealment occurs." *Id.* (citation omitted).

Applying these standards, the Court finds Mbome's allegations raise "some basis" for tolling her TVPRA claims, regardless of whether Mbome is correct that the claims first accrued in May 2016. Mbome alleges she was misled about the compensation she would receive, resulting in her being misled about her rights under the TVPRA. *See, e.g.*, Compl. ¶¶ 28 and 138, ECF No. 1. She also alleges that "Defendants exploited [her] lack of education, limited access to resources, and her limited ability to speak English," *id.* at ¶ 2, and that Defendants confiscated her passport and restricted her travel, *id.* at ¶¶ 43–48. These allegations support an inference at the 12(b)(6) stage that Mbome was "prevented in some extraordinary way from asserting [her] rights." *Teemac*, 298 F.3d at 457. Moreover, Mbome alleges Defendants fraudulently concealed their intent to undercompensate her for the services she rendered them. *See, e.g.*, *id.* at ¶ 42 ("Despite knowing that they were legally obligated to pay Ms. Mbome for her services, Defendants never explained to Ms. Mbome any details regarding requirements that domestic workers like Ms. Mbome are to be paid a minimum wage, nor did they post or provide Ms. Mbome with such information during or after her employment with them. Defendants took these steps to willfully mislead Ms. Mbome regarding her rights."). At the pleading stage, the Court cannot say—and Defendants fail to demonstrate—that Mbome's allegations raise *no basis* for equitable tolling. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's TVPRA claims.

For similar reasons, Defendants' wholly conclusory argument, *see* Defs.' Mot. Dismiss 2, ECF No. 15 ("Plaintiff's [state trafficking] claim for relief arose, at the latest, when Plaintiff claims she came to the United States, on or about April 29, 2008."), does not demonstrate that Mbome's allegations affirmatively establish that her state trafficking claim is time-barred. There is a lack of authority on when a Texas trafficking claim accrues. But like federal law, *see Loeber*, 924 F.2d at 1344 ("'[I]nnocence' may render equitable tolling appropriate . . . when fraudulent concealment occurs."), Texas law recognizes the concept of fraudulent concealment, *see, e.g.*, *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (recognizing "fraudulent concealment as an equitable estoppel to the defense of limitations"). Indeed, "Texas courts . . . have consistently held that a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *Id.* at 908–09. Under Texas law, fraudulent concealment "requires evidence that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999).

At the 12(b)(6) stage, Mbome need not *prove* these fraudulent-concealment elements. *Jones*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."). She must, however, adequately allege them. And for the same reasons articulated above in analyzing the TVPRA claim, Mbome has done so. *See* Compl. ¶ 42, ECF No. 1. Accordingly, the Court **DENIES** Defendants' motion to dismiss with respect to Mbome's Texas trafficking claim.

## IV. CONCLUSION

"A movant may assert a statute of limitations defense through a motion to dismiss when 'it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.'" *Channel Source Inc.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *2 (quoting *Jones*, 339 F.3d at 366). But at the 12(b)(6) stage, the limitations defense is purely a pleading matter—the only question is whether the allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, "affirmatively demonstrate" the claims are time-barred *and* fail to raise "some basis" for tolling. *Frame*, 657 F.3d at 240. Indeed, "Professors Wright and Miller have observed that raising the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the complaint." *FDIC v. Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993) (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1277 (1990)). Therefore, a 12(b)(6) dismissal on a limitations defense should take place only where "it can be determined from the face of a complaint that the limitations period has expired." *Channel Source Inc.*, No. 3:15-CV-0271-P, 2015 WL 13118198, at *2 (citation omitted).

Here, Defendants' limitations arguments are largely conclusory and, in any event, fail to show that the allegations in Mbome's Complaint affirmatively demonstrate her claims are time-barred. Accordingly, the Court finds the Motion to Dismiss, ECF No. 14, should be and is hereby **DENIED**.

**SO ORDERED** in this **3rd day** of **May, 2019**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**