**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| BRIDGET NAMONDO MBOME, | |
| Plaintiff, | |
| v. | |
| HENRY NJIE, EMILIA NJIE, and MARY MBELLA, | CIVIL ACTION NO. 4:18-cv-00597-P |
| Defendants. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Matthew V. Lloyd  (TX Bar No. 24083404)
mvlloyd@akingump.com
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone:  214-969-2800
Facsimile:  214-969-4343

Corey W. Roush  (DC Bar No. 466337)
Melissa D. Whitaker (DC Bar No. 1028815)
(Admitted *Pro Hac Vice*)
croush@akingump.com
mwhitaker@akingump.com
Akin Gump Strauss Hauer & Feld LLP
2001 K Street N.W.
Washington,  D.C. 20006
Telephone:  202-887-4000
Facsimile:  202-887-4288

Courtney L. Stahl (TX Bar No. 24088463)
cstahl@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
Telephone: 713-220-5800
Facsimile: 713-236-0822

*Attorneys for Plaintiff Bridget Namondo Mbome*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................2

III.    ARGUMENT AND AUTHORITY .................................................................7

      A.      Legal standard for summary judgment ............................................7

      B.      Defendants' conduct violates 18 U.S.C. §1589's prohibition on forced
labor (Count 1)....................................................................................7

      C.      Defendants Violated 18 U.S.C. §1590 by Recruiting, Transporting, and
Harboring Ms. Mbome (Count 2)........................................................13

      D.      Defendants Violated 18 U.S.C. §1594 by Conspiring to Effect the
Trafficking Scheme (Count 4)............................................................15

      E.      Ms. Mbome's employment with the Njies is covered by the FLSA's
minimum wage provisions (Count 6) ................................................16

      F.      Ms. Mbome is entitled to summary judgment on her quantum meruit claim
(Count 11) .........................................................................................20

IV.     CONCLUSION...............................................................................................22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019) .................................................................13

*Campos v. Lemay*, No. 05-civ-2089, 2007 WL 1344344, at *3 (S.D.N.Y. May 7, 2007) ...................... 19, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ..................................................................................7

*Falk v. Brennan*, 414 U.S. 190, 195 (1973) ..............................................................................................17

Fed. R. Civ. P. 56(a) .................................................................................................................................7

*Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) ........................................................................... 16, 17

*Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018) ..................................................21

*Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ...................21

*Lagayan v. Odeh*, 199 F. Supp. 3d 21 (D.D.C. 2016) ..............................................................................9

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) .......................................................20

*McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) .............................................................17

*Paguirigan v. Prompt Nursing Employment Agency LLC*, No. 17-CV-1302 (NG) (JO), 2019 WL 4647648, at *17
   (E.D.N.Y. Sept. 24, 2019) .......................................................................................................................9

*Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996) .....................................................................7

*Rangel v. Newkirk*, No. A-05-CA-528-SS, 2006 WL 8432025, at *2 (W.D. Tex. June 6, 2006) ...................19

*Scott v. Harris*, 550 U.S. 372, 380 (2007) ................................................................................................7

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985) ..............................................16

*United States v. Bradley*, 390 F.3d 145, 152-53 (1st Cir. 2004) .................................................................9

*United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) ..................................................................... 8, 12

**STATUTES**

18 U.S.C. § 1590(a) ............................................................................................................................ 13, 15

18 U.S.C. § 1594(b) ..................................................................................................................................15

29 C.F.R. § 552.3 ......................................................................................................................................20

29 C.F.R. § 791.2 ......................................................................................................................................17

29 U.S.C. § 202(a) ....................................................................................................................................20

29 U.S.C. § 203(e)(1) ................................................................................................................................16

29 U.S.C. § 206 .........................................................................................................................................16

29 U.S.C. § 206(f) .....................................................................................................................................20

## RULES

FED. R. CIV. P. 56(A) ..................................................................................................................................7

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 106-939 .....................................................................................................................8

Plaintiff Bridget Namondo Mbome submits this brief in support of her Motion for Partial Summary Judgment, ECF No. 58, and states as follows.

## I.      INTRODUCTION

Ms. Mbome brings this action for damages resulting from being trafficked into the United States from Cameroon by Defendants Henry Njie, Emilia Njie, and Mary Mbella (collectively "Defendants").  In 2008, Ms. Mbome was lured to the United States to take care of the Njies' children and perform other household tasks after discussing with Ms. Mbella that she would be compensated for her work as the Njies' live-in domestic worker.  During the eight years that Ms. Mbome lived with the Njies, she generally worked nearly 100 hours a week on average.  Despite this grueling scheduling, Defendants failed to compensate Ms. Mbome for her work.  In addition to withholding compensation, Defendants intentionally allowed Ms. Mbome's visa and passport to expire.  Defendants exploited Ms. Mbome's lack of education, limited access to resources, and her limited ability to speak English, leaving her with no exit options.

Ms. Mbome seeks partial summary judgment on liability on her human trafficking claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, 1590, and 1594 (Counts 1, 2, and 4).  Ms. Mbome also asks the Court to find that Ms. Mbome was an employee of the Njies for purposes of the minimum wage requirements under the Fair Labor Standards Act ("FLSA") (Count 6).  In addition, Ms. Mbome also seeks partial summary judgment on liability for her claim for quantum meruit (Count 11).  Ms. Mbome will present evidence on damages in support of these claims at trial.[1]

---

[1] At this time, Ms. Mbome does not move for summary judgment on her human trafficking claims under 18 U.S.C. §1592 (Count 3), 18 U.S.C. §1593A (Count 5), and Tex. Civ. Prac. & Rem. Code §98.002 (Count 7) or on her claims for fraud (Count 8), theft of services (Count 9), or breach of implied contract (Count 10).

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Ms. Mbome is a 73-year old woman originally from Cameroon. Mbome Dep. 8:9-12; 24:9-10 (App. 89, 92). She has no or extremely little formal education. Emilia Njie Dep. 48:16-49-6 (App. 137-38); Henry Njie Dep. 25:16-19 (App. 36); Mbome Aff. ¶ 2 (App. 3). Ms. Mbome primarily supported herself in Cameroon by farming and cooking food to sell in a local school. Mbome Dep. 10:11-16; 48:15-50:3 (App. 90, 93-95). Ms. Mbome was once married and had a son. Mbome Aff. ¶ 3 (App. 4); Mbome Dep. 148:15-149:4 (App. 100-01). However, her marriage ended and her son passed away as a teenager. Mbome Aff. ¶¶ 3-4 (App. 4). Ms. Mbome currently has one living grandchild. Mbome Dep. 149:5-12 (App. 101); Mbella Dep. 37:11-13 (App. 105).

Mary Mbella is Ms. Mbome's half-cousin. Mbome Dep. 13:16-21 (App. 91). Emilia Njie is Ms. Mbella's daughter, a licensed vocational nurse, who has lived in the United States since approximately 2003. Emilia Njie Dep. 9:11-20 (App. 124). Henry Njie is Ms. Njie's husband, a pharmacist, who has lived in the United States for at least 18 years. Henry Njie Dep. 7:24-8:2 (App. 30-31). Dr. Njie has owned and operated a number of businesses in Cameroon, including multiple apartment complexes, a car rental agency, and a store. Henry Njie Dep. 97:25-101:3 (App. 68-72).

In late 2007 or early 2008, Ms. Mbome was approached by Ms. Mbella, who asked Ms. Mbome if she would be interested in moving to the United States to live with and assist Dr. and Ms. Njie (collectively, "the Njies"). Mbella Dep. 41:12-23 (App. 106). Ms. Mbella and Ms. Njie each informed Ms. Mbome that the Njies needed help taking care of their growing family. Mbella Dep. 41:12-23 (App. 106); Emilia Njie Dep. 55:17-56:5, 61:16-21 (App. 140-41, 144); Henry Njie Dep. 41:19-42:12 (App. 47-48). At the time, Ms. Njie was pregnant with the family's second child while also attending classes to become a nurse. Mbella Dep. 41:12-19 (App. 106); Emilia Njie

2

Dep. 55:17-56:5 (App. 140-41); Henry Njie Dep. 41:19-42:12 (App. 47-48). At the same time, Henry Njie owned and operated a pharmacy full-time. Henry Njie Dep. 11:4-12, 42:5-9 (App. 33, 48); Emilia Njie Dep. 62:13-15 (App. 145). After Ms. Mbella presented her with the opportunity, Ms. Mbome agreed to come to the United States to live with the Njies at their home in Grand Prairie, Texas and assist them with childcare and household cleaning. Mbome Aff. ¶¶ 5-6 (App. 4); *see also* Henry Njie Dep. 34:7-9 ("Q: Why did she come to live with you? A: She came to live with us – she came to live with us to – to help us with the kids.") (App. 40).

At the outset, Dr. Njie believed that Ms. Mbome's work would be compensable and discussed with his wife how Ms. Mbome should be paid. Henry Njie Dep. 45:4-24 (App. 51). Ms. Njie, Ms. Mbella, and Ms. Mbome discussed directly how Ms. Mbome should be compensated. Emilia Njie Dep. 83:5-22 (App. 157). The parties did not sign a written contract, but they came to an agreement that in exchange for Ms. Mbome's assistance to the Njies, the Njies would compensate Ms. Mbome for her work. Mbella Dep. 44:9:13, 44:25-45:6 (App. 108-09); Emilia Njie Dep. 83:5-22 (App. 157); Mbome Dep. 82:2-20 (App. 98); Mbome Aff. ¶¶ 7-8 (App. 4).

Ms. Mbella took Ms. Mbome to obtain a visa and passport to come to the United States and assisted her with the application process. Mbella Dep. 47:24-48:2, 53:23-54:8 (App. 110-13). The Njies paid the requisite fees for Ms. Mbome to obtain her visa and passport, and submitted an invitation letter on her behalf. Emilia Njie Dep. 64:12-21 (App. 147); Henry Njie Dep. 40:13-18 (App. 46). The Njies also submitted an affidavit stating that they would financially support Ms. Mbome during her time in the United States. Emilia Njie Dep. 71:13-20 (App. 150); Henry Njie Dep. 37:16-38:9 (App. 43-44). Ms. Mbome obtained a six-month visa for travel to the United States. Ex. B (App. 13).

After Ms. Mbome obtained her travel documents, the Njies purchased her a plane ticket to come to America. Emilia Njie Dep. 75:23-25 (App. 151); Henry Njie Dep. 36:24-37:2 (App. 42-43). Ms. Mbome arrived at the Njies' home in Grand Prairie, Texas, in late April or early May 2008. Henry Njie Dep. 33:12-17 (App. 39); Emilia Njie Dep. 53:15-24 (App. 139). The Njies met Ms. Mbome at the airport and brought her to their home. Emilia Njie Dep. 77:11-16 (App. 152).

At the time of Ms. Mbome's arrival in 2008, the Njies had one four-year old child. Emilia Njie Dep. 22:19-23:7 (App. 126-27). The Njies' second child was born on May 8, 2008, shortly after Ms. Mbome's arrival. Emilia Njie Dep. 11:11-12, 53:15-24 (App. 125, 139). A third child was born in 2012. Emilia Njie Dep. 22:19-23:7 (App. 126-27).

For a period of about five years, beginning after Ms. Njie had her second child in May 2008, Ms. Njie worked in her husband's pharmacy, Pharmacia Henrique. Emilia Njie Dep. 29:13-16, 33:23-34:7 (App. 129-131). Ms. Njie estimated that she worked about 20 hours per week making deliveries and attending to other responsibilities at the pharmacy. Emilia Njie Dep. 33:17-22 (App. 130). In 2014, Ms. Njie began working as a licensed vocational nurse with Pediatric Home Healthcare. Emilia Njie Dep. 28:13-15 (App. 128). Over the years, Ms. Njie's hours have varied widely at Pediatric Home Healthcare, and she has worked 8-hour shifts, 12-hour shifts, and overnight shifts. Emilia Njie Dep. 38:4-14, 38:19-40:23 (App. 134-136). Dr. Njie has worked full-time at Pharmacia Henrique since 2005. Henry Njie Dep. 10:19-11:12 (App. 32-33).

At the Njies' home, Ms. Mbome completed tasks such as changing diapers, cooking for the children, feeding the children, washing and ironing the children's clothes, giving the baby a bottle, bathing the children, dressing the children, babysitting, ensuring that the children completed their homework, and putting the children to bed. Henry Njie Dep. 35:23-36:23, 56:24-58:8 (App. 41-

42, 59-61); Emilia Njie Dep. 87:7-13, 89:5-17, 89:24-90:4 (App. 160-62). Ms. Mbome also performed other household tasks, including washing windows, dusting, sweeping, mopping, laundry, cooking meals, washing dishes, and cleaning the children's and guest's bedrooms. Henry Njie Dep. 46:14-47:8, 48:7-14, 48:25-49:11, 53:2-12, 61:16-62:10 (App. 52-56, 62-63); Emilia Njie Dep. 96:14-97:3, 97:25-98:10 (App. 164-66). The Njies' work schedules sometimes required both of them to be working at the same time, leaving Ms. Mbome at home alone with the children. Henry Njie Dep. 55:14-56:3 (App. 58-59). While Ms. Mbome lived with the Njies, Ms. Njie never had a need to hire a babysitter to watch the children. Emilia Njie Dep. 109:4-10 (App. 167).

Ms. Mbome completed these tasks from 2008 through 2016 without receiving regular pay. Emilia Njie Dep. 111:23-112:5 (App. 169-70). From time to time, Ms. Mbome received cash from the Njies in amounts of $150-$300, which Dr. Njie characterized as a "gift." Emilia Njie Dep. 113:8-20 (App. 113); Henry Njie Dep. 31:22-33:7 (App. 37-39). The Njies kept no records of the amounts of money that they gave to Ms. Mbome, nor did they keep records documenting the hours that Ms. Mbome worked to complete childcare or housekeeping tasks. Emilia Njie Dep. 120:11-121:3 (App. 172-73). The Njies are familiar with the existence of minimum wage laws, yet they never informed Ms. Mbome about the existence of the minimum wage and did not post any minimum wage notices in their home as required by the Department of Labor. Henry Njie Dep. 17:22-24, 167:15-20 (App. 34, 81); Emilia Njie Dep. 36:8-11, 120:5-10, 122:18-21 (App. 132, 172, 174); Mbome Aff. ¶ 10 (App. 5).

The Njies housed Ms. Mbome and took care of her basic needs, including paying for medical visits and medication for her high blood pressure. Henry Njie Dep. 111:23-112:22 (App. 73-74). Ms. Mbome had her own room in the Njies' home. Henry Njie Dep. 61:8-9 (App. 62).

Ms. Mbome does not know how to drive and relied on the Njies and their friends or family members to take her places. Emilia Njie Dep. 78:19-25 (App. 153).

The Njies renewed Ms. Mbome's visa one time for an additional six months. Emilia Njie Dep. 146:5-14 (App. 182). They obtained the renewal on the basis of Ms. Mbome's extremely high blood pressure and her need to continue receiving medical care in the United States. Emilia Njie Dep. 134:23-135:19 (App. 175-76); Henry Njie Dep. 82:19-83:9 (App. 64-65). Ms. Mbome's visa expired in April 2009. Ex. C at 1 (App. 15); Emilia Njie Dep. 146:5-10 (App. 182). Although they were aware that Ms. Mbome's visa could not be renewed again, the Njies had not built or offered Ms. Mbome a house or offered her any form of alternate compensation at the time her visa expired. Emilia Njie Dep. 137:22-138:6, 146:15-17 (App. 177-78, 182).

Ms. Mbome's passport expired in 2013. Ex. A (App. 11). Dr. Njie did not want Ms. Mbome to return to Cameroon to attempt to get a new passport because he believed she would be unable to return to the United States, and the Njies still needed her help taking care of their children. Henry Njie Dep. 92:25-93:19 (App. 66-67). Ms. Njie informed Ms. Mbome that she would no longer be able to fly due to her expired documents and that she no longer had legal status to be in the country. Emilia Njie Dep. 151:3-12, 151:18-21 (App. 186).

In or around October 2015, the Njies informed Ms. Mbome that they had a built a home in Cameroon for her and that it was time for her to return there. Mbome Aff. ¶ 15 (App. 6). The home was not built on Ms. Mbome's land nor was she listed as the owner of the property. Emilia Njie Dep. 155:9-15, 169:5-13 (App. 187, 189). After learning this, Ms. Mbome refused to accept the home. Mbome Dep. 73:8-22 (App. 96); Mbome Aff. ¶ 16 (App. 6). Ms. Mbome asked to be paid $75,000 instead. Emilia Njie Dep. 164:3-11 (App. 188). Instead, the Njies purchased Ms. Mbome a three-day, one-way bus ticket to Baltimore, Maryland. Emilia Njie Dep. 181:5-17,

186:16-187:24 (App. 191-93). Before she left, Ms. Njie handed Ms. Mbome $5,000 and asked her to sign a statement in which the Njies purported to release all "legal responsibility" for Ms. Mbome. Mbome Dep. 76:8-12 (App. 97); Emilia Njie Dep. 172:13-23 (App. 190); Ex. D (App. 18). Ms. Mbome traveled by bus from Texas to Maryland by herself from May 8-10, 2016. Emilia Njie Dep. 181:5-17 (App. 191); Ex. E at 1-2 (App. 20-21). The Njies have not spoken to Ms. Mbome since placing her on the bus to Maryland. Emilia Njie Dep. 191:18-20 (App. 194); Henry Njie Dep. 163:3-11 (App. 80).

## III.   ARGUMENT AND AUTHORITY

### A.   Legal standard for summary judgment

Summary judgment on a claim is proper when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A plaintiff moving for summary judgment satisfies its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law. *See San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996). The Supreme Court has noted that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," and that Rule 56 "should be interpreted in a way that allows it to accomplish this purposes." *Celotex*, 477 U.S. at 323-24. To the same end, Rule 56(g) allows a court to grant partial relief to a moving party and "enter an order stating any material fact— including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."

### B.   Defendants' conduct violates 18 U.S.C. §1589's prohibition on forced labor (Count 1)

Section 1589(a) of the TVPRA provides that it is a violation of the law whenever any person "knowingly provides or obtains the labor or servicees of a person by… means of serious harm or threats of serious harm to that person or another person…or by means of any scheme,

plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm." 18 U.S.C. §1589(a). Serious harm is defined to include "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. §1589(c)(2).

The legislative history of the TVPRA provides further clarity that the Act is intended to reach situations in which overt physical force and threats of such force are not used. Congress provided that "Section 1589 is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery." H.R. Conf. Rep. No. 106-939, 101. Congress further explained that "serious harm…refers to a broad array of harms, including both physical and nonphysical" harms and that the term is "to be construed with respect to the individual circumstances of victims that are relevant in determining whether a particular type or certain degree of harm or coercion is sufficient to maintain or obtain a victim's labor or services, including the age and background of the victims." H.R. Conf. Rep. No. 106-939, 101.

Threats need not be overt to come within the ambit of §1589; even subtle conduct intended to take advantage of the trafficking victim can give rise to liability. *See United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) (upholding conviction where defendants "intentionally manipulated the situation so that [victim] would feel compelled to remain" due to having "no exit option"). For example, an employer's warning that an undocumented domestic worker could be reported due to her immigration status or inequalities in the employer and employee's education and socioeconomic status can function as restraints in practice. *Id*. at 713 (recognizing that the

8

employer's warnings that the employee could be deported due to her immigration status targeted the employee's "special vulnerabilities"—her status as an undocumented immigrant); *United States v. Bradley*, 390 F.3d 145, 152-53 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005) (determining that it is appropriate to consider workers' "special vulnerabilities" even where workers are paid and free to travel unaccompanied). Accordingly, "no allegation of actual physical harm or an explicit threat of such harm is required to show the use of coercion for purposes of labor trafficking." *Lagayan v. Odeh*, 199 F. Supp. 3d 21 (D.D.C. 2016).

In assessing financial harm as a form of serious harm, trafficking victims may willingly acquiesce to exploitative terms that nonetheless violate the TVPRA. In the context of the applicable vulnerabilities at play in these circumstances, courts have held that "[a]n employee's prior awareness of the harm does not make a defendant's actions, if indeed in violation of the TVPA, any less exploitative. Nor does a [worker's] desire to come to the United States, or that he or she viewed the job as a stepping stone, give an employer license to subject him or her to unlawful work conditions in violation of the TVPA." *Paguirigan v. Prompt Nursing Employment Agency LLC*, No. 17-CV-1302 (NG) (JO), 2019 WL 4647648, at *17 (E.D.N.Y. Sept. 24, 2019), *reconsideration denied*, No. 17-CV-1302 (NG) (JO), 2020 WL 122704 (E.D.N.Y. Jan. 9, 2020).

In this case, the undisputed facts show that taking into consideration Ms. Mbome's particular vulnerabilities as an elderly immigrant without legal status, with limited education, without income, and with no knowledge of U.S. law, Defendants violated §1590's prohibition on forced labor by (1) knowingly obtaining Ms. Mbome's labor and services and (2) by doing so through a pattern or scheme of serious financial harm to Ms. Mbome.

1.   <u>Defendants knowingly obtained the labor and services of Ms. Mbome</u>

As to the first element, Defendants do not dispute that they obtained Ms. Mbome's services to take care of their children and help them around the home. *See* Defs.' Resp. to Pl.'s Requests

for Admission No. 2 ("Defendants admit Plaintiff occasionally cooked meals and assisted with laundry"); Defs.' Resp. to Pl.'s Requests for Admission No. 3 ("Defendants admit that Plaintiff assisted with certain childcare tasks"). Specifically, Ms. Mbella, acting in coordination with and at the direction of the Njies, approached Ms. Mbome to seek her live-in childcare and home services in the United States. Mbella Dep. 41:12-23 (App. 106); Emilia Njie Dep. 55:17-56:5, 61:16-21 (App. 140-41, 144); Henry Njie Dep. 41:19-42:12 (App. 47-48). The Njies then paid for Ms. Mbome to obtain travel documents and a plane ticket to come to America. Emilia Njie Dep. 64:12-21 (App. 147); Henry Njie Dep. 40:13-18 (App. 46). Ms. Mbella assisted Ms. Mbome in obtaining these documents in Cameroon by accompanying her, filling out the application documents, and generally helping throughout the process. Mbella Dep. 47:24-48:2; 53:23-54:8 (App. 110-13).

The Njies also testified that, once in America, Ms. Mbome completed a variety of tasks for their benefit, including changing diapers, cooking for and feeding the children, washing and ironing the children's clothes, bathing the children, dressing the children, babysitting, putting the children to bed, washing windows, dusting, sweeping, mopping, laundry, cooking meals, washing dishes, and cleaning the children's and guest's bedrooms. Henry Njie Dep. 35:23-36:23, 46:14-47:8, 48:7-14, 48:25-49:11, 53:2-12, 56:24-58:8, 61:16-62:10 (App. 41-42, 52-56, 59-63); Emilia Njie Dep. 87:7-13, 89:5-17, 89:24-90:4, 96:14-97:3, 97:25-98:10 (App. 160-61, 164-66). Accordingly, Defendants knowingly obtained Ms. Mbome's labor and services as contemplated under §1589(a).

 2. <u>Defendants employed a scheme of serious financial harm to manipulate Ms. Mbome's special vulnerabilities to secure her continued performance of services</u>

As to the second element, Defendants' conduct violates §1589 due to the means by which they obtained Ms. Mbome's continued services. Using a scheme and pattern that intentionally

threatened and resulted in serious financial harm to Ms. Mbome, Defendants took advantage of Ms. Mbome's total financial dependence on them, her lack of understanding of U.S. law, and her lack of legal immigration status in order to induce Ms. Mbome to remain in their employ while she waited in vain to receive the compensation Defendants promised her in exchange for her labor and services. Defendants abused their position of familial trust to procure Ms. Mbome's services on exploitative terms. Indeed, they asked her to give up her employment in Cameroon to move to America, to give up her ability to earn regular income, and induced her to transfer the authority over what little land she owned to Defendants. Ms. Mbome thereby became subject entirely to the Njies' whims as to when, how, and if she would be paid. As a result, Ms. Mbome suffered serious financial harm by working without payment for eight years.

### i.    Defendants intentionally allowed Ms. Mbome's documents to expire leaving her with no exit options

Ms. Njie testified that she initially informed Ms. Mbome that she would be taking care of their children and assisting in the household for only a "short time." Emilia Njie Dep. 60:14-20 (App. 143). However, when Ms. Mbome's visa expired in April 2009—one year after she arrived—the Njies had not made any arrangements to monetarily pay Ms. Mbome or provide her with any other form of compensation. Emilia Njie Dep. 146:15-17 (App. 182). Likewise, when Ms. Mbome's passport expired—five years after her arrival in the United States—the Njies still had not made any arrangements to monetarily pay Ms. Mbome or provide her with any other form of compensation. See Mbome Aff. ¶ 12 (App. 5).

Indeed, the Njies permitted Ms. Mbome's travel documents to expire so that she was at risk of deportation and or detention at any time should she come into contact with authorities. Ms. Njie informed Ms. Mbome of her precarious legal status and inability to travel. Emilia Njie Dep. 151:3-12, 151:18-21 (App. 186). And Dr. Njie acknowledged that he wanted Ms. Mbome to stay

11

to continue taking care of their children even after her passport expired and did not take steps to help her obtain a new passport for that reason. Henry Njie Dep. 92:25-93:19 (App. 66-67). Ms. Njie informed Ms. Mbome that she could not get another visa after the first renewal, and further informed Ms. Mbome that she could no longer take flights because it might not be "safe" to do so due to her expired documentation. Emilia Njie Dep. 146:25-148:8 (App. 182-84); see also Emilia Njie Dep. 151:3-12, 151:18-21 (App. 186). Ms. Njie made this representation to Ms. Mbome despite knowing that the Njies could obtain a travel document for Ms. Mbome to return to Cameroon at any time. Emilia Njie Dep. 150:20-151:2 (App. 185-86).

The Njies' testimony reveals that they intentionally deprived Ms. Mbome of valid legal documentation in order to continue to secure childcare and housekeeping services for below legal cost. *See Calimlim*, 538 F.3d at 713. In turn, Ms. Mbome reasonably believed that she should continue working for the Njies in order to obtain the compensation that Defendants had promised her, notwithstanding the expiration of her legal stay in the United States. Mbome Aff. ¶ 12 (App. 5).

> ii. *Defendants withheld compensation from Ms. Mbome to ensure her financial dependence on them, creating serious financial harm*

In addition to removing Ms. Mbome's exit options, Defendants compelled Ms. Mbome to continue working for them by withholding compensation. By the time her visa and passport expired, Ms. Mbome had no pay for years of work raising the Njies' children, she was being told that she could not travel safely, and she no longer even had the paperwork for her own land in Cameroon. *See* Mbome Dep. 82:2-83:3 (App. 98-99). In addition, in light of Ms. Mbome's advanced age and limited education, she had no other realistic employment options in the United States except to continue working for the Njies in the hope that they would eventually pay her or provide her with another form of compensation.

The Njies, however, were familiar with the U.S. minimum wage and explicitly understood that Ms. Mbome was performing compensable work. Henry Njie Dep. 17:22-24, 18:13-16, 45:4-24, 167:15-20 (App. 34-35, 51, 81); Emilia Njie Dep. 36:8-10, 36:19-37:11 (App. 132-33). Nonetheless, they took advantage of Ms. Mbome's unawareness of the minimum wage laws to get her to work for them at far better terms than she should have legally been paid.

Considering Ms. Mbome's special vulnerabilities as an illiterate elderly woman without legal status in the United States and without any money other than the amounts given and owed to her by Defendants, Defendants in this case intentionally manipulated Ms. Mbome to remain in their employment through a pattern of threatened and actual serious financial harm.

Because both elements of the forced labor claim under §1589(a) are met, a grant of summary judgment in Ms. Mbome's favor is appropriate based on these undisputed facts.

**C. Defendants Violated 18 U.S.C. §1590 by Recruiting, Transporting, and Harboring Ms. Mbome (Count 2)**

If a violation of §1589 is found, Defendants are also liable for violating §1590 based on their trafficking of Ms. Mbome. Section 1590 forbids a person from "knowingly recruit[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] by any means, any person for labor or services in violation of this chapter." 18 U.S.C. §1590(a).

Courts have found that enlisting a trafficking victim into the exploitative employment position as well as sponsoring the victim's immigration documents for purposes of taking such a position are sufficient to be considered recruitment within the meaning of §1590. *See Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019) ("The defendants recruited [plaintiff] by promising to transfer and sponsor his H-2B visa…"). Here, Defendants have readily admitted their involvement in recruiting Ms. Mbome to the United States to provide childcare services to the Njies.

13

1. <u>Ms. Mbella recruited and transported Ms. Mbome</u>

Working in coordination with the Njies at all relevant times, Ms. Mbella first approached Ms. Mbome to ask Ms. Mbome if she would come to America to live with and assist the Njies in taking care of their growing family. Mbella Dep. 41:12-23 (App. 106). Ms. Mbella took Ms. Mbome to obtain a visa and passport to come to the United States and helped her with the application process. Mbella Dep. 47:24-48:2; 53:23-54:8 (App. 110-13). Ms. Mbella also received the requisite fees and paperwork from the Njies to pay for and obtain Ms. Mbome's visa and passport. Mbella Dep. 54:4-14 (App. 113); Henry Njie Dep. 40:13-18 (App. 46). Ms. Mbella further took Ms. Mbome to the airport in Cameroon for her journey to the United States. Mbella Dep. 62:5-11 (App. 114).

Ms. Mbella's admitted conduct constitutes recruiting and transporting Ms. Mbome within the meaning of § 1590 and a grant of summary judgment in Ms. Mbome's favor as to Ms. Mbella's liability for this claim is appropriate.

2. <u>Henry and Emilia Njie recruited, transported, and harbored Ms. Mbome</u>

Likewise, the Njies were closely involved in the process of Ms. Mbome's recruitment and transportation to the United States. The Njies paid the requisite fees for Ms. Mbome to obtain her visa and passport and submitted an invitation letter on her behalf. Emilia Njie Dep. 64:12-21 (App. 147); Henry Njie Dep. 40:13-18 (App. 46). The Njies submitted an affidavit stating that they would financially support Ms. Mbome during her time in the United States. Emilia Njie Dep. 71:13-20 (App. 150); Henry Njie Dep. 37:16-38:9 (App. 43-44). Due to Defendants' collective efforts, Ms. Mbome obtained a six-month visa for travel to the United States in order to live with and assist the Njies in their home. *See* Ex. B (App. 13).

The Njies also harbored Ms. Mbome in their home during her trafficking. After Ms. Mbome obtained her travel documents, the Njies purchased her plane ticket to the United States.

Emilia Njie Dep. 75:23-25 (App. 151); Henry Njie Dep. 36:24-37:2 (App. 42-43). The Njies met Ms. Mbome at the airport when she arrived and brought her to their home in Grand Prairie, Texas. Emilia Njie Dep. 77:11-16 (App. 152). Ms. Mbome resided with the Njies in their home for approximately the next eight years while in their employment. *See* Henry Njie Dep. 33:12-19 (App. 39).

Accordingly, a grant of summary judgment in Ms. Mbome's favor concerning the Njies' liability for violation of §1590 is appropriate on these facts.

**D.    Defendants Violated 18 U.S.C. §1594 by Conspiring to Effect the Trafficking Scheme (Count 4)**

If a violation of §1589 is found, Defendants are also liable for violating §1594 based on their conspiracy to obtain Ms. Mbome's forced labor and their conspiracy to subject Ms. Mbome to trafficking. Section 1594 of the TVPRA provides that "[w]hoever conspires with another to violate section…1589 [or] 1590" of the TVPRA is equally liable for the underlying conduct. 18 U.S.C. §1594(b).

Dr. Njie testified that he, his wife, and Ms. Mbella worked together to obtain Ms. Mbome's agreement to come live with the Njies and to obtain her travel documentation to ensure she would be available to work for them in the United States. Henry Njie Dep. 39:23-40:12, 41:19-42:4 (App. 45-48). While Ms. Mbella and Ms. Njie primarily handled the direct communications with Ms. Mbome about the details of the offer and her compensation, Dr. Njie was aware of his wife's activities and communicated with her about the status. Henry Njie Dep. 39:23-40:12 (App. 45-46); *see also* Mbella Dep. 42:19-25 (App. 107); Emilia Njie Dep. 56:9-16 (App. 141).

Accordingly, a grant of summary judgment is appropriate in Ms. Mbome's favor as to the liability of all Defendants for a violation of §1594.

**E.    Ms. Mbome's employment with the Njies is covered by the FLSA's minimum wage provisions (Count 6)**

Ms. Mbome seeks partial summary judgment regarding the application of the FLSA and asks the Court to find that Ms. Mbome was an employee of the Njies for purposes of the Act's minimum wage requirements.   As discussed below, there is no dispute regarding the facts underpinning such a finding.   Indeed, deposition testimony from the Njies, themselves, confirms the relevant elements.[2]

The FLSA requires employers to pay employees, including individuals employed in domestic services in private homes, at least the federal minimum wage for all hours worked.  29 U.S.C. §206.   For the FLSA to apply, an employee must establish that: (1) she had an employer/employee relationship with the defendant; and (2) the parties were engaged in activities covered by the FLSA.  *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985).

1.    The Njies employed Ms. Mbome

The Njies employed Ms. Mbome for purposes of the FLSA's minimum wage requirements. The FLSA broadly defines the term "employee" as "any individual employed by an employer."  29 U.S.C. §203(e)(1).   The term "employer" is defined with similar breadth to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §203(d).  The term "employ" includes "to suffer or permit to work." 29 U.S.C. §203(g).

The Fifth Circuit has adopted the "economic reality" test for determining whether an employer/employee relationship exists under the FLSA.  *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).   Under this test, courts specifically consider whether the alleged employer: (1)

---

[2] The amount of minimum wages and liquidated damages due to Ms. Mbome under the FLSA will be reserved for trial.

possessed the power to hire and fire the employee; (2) supervised and controlled the employee's work schedule or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* at 355. A party need not, however, establish every element of the test. *See id.* at 357. Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam).

The FLSA's broad definition of "employer" allows for more than one entity or individual to be held liable for violations of the FLSA. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973) (citing 29 U.S.C. §203(d)). In cases where there may be more than one employer, the Fifth Circuit applies the economic reality test to each alleged employer. *Gray*, 673 F.3d at 355. "[I]f the facts establish that the employee is employed jointly by two or more employers . . . all joint employers are responsible, both individually and jointly, for compliance with [the FLSA's] provisions." 29 C.F.R. §791.2.

Applying the economic reality test to the instant case, both Dr. Njie and Ms. Njie employed Ms. Mbome as a matter of law. As to the first element, the Njies had the power to hire and fire Ms. Mbome. *In hiring Ms. Mbome*, the Njies, with the assistance of their agent, Ms. Mbella, recruited Ms. Mbome to come to the United States to assist them with childcare and other household tasks. *See, e.g.*, Henry Njie Dep. 35:11-17, 41:19-42:9 (App. 41, 47); Emilia Njie Dep. 55:18-56:2; 85:4-21 (App. 140-41, 158). After Ms. Mbella initially proposed that Ms. Mbome go to the United States to help the Njies, Ms. Njie and Dr. Njie discussed with each other the prospect of Ms. Mbome coming to live with their family, then Ms. Njie spoke with Ms. Mbome directly. Emilia Njie Dep. 59:20-64:6, 68:21-69:20, 85:4-21 (App. 140-41, 158); Henry Njie Dep. 42:18-43:8 (App. 48-49). The Njies then submitted an invitation letter and affidavit on Ms. Mbome's

behalf, sent money for Ms. Mbome's visa and passport, and purchased her plane ticket to the United States. Emilia Njie Dep. 64:12-21, 71:13-20, 75:23-25 (App. 147, 150-51); Henry Njie Dep. 36:24-37:2, 37:16-38:9, 40:13-18 (App. 42-44, 46). *In terms of firing Ms. Mbome*, the Njies had the ability to terminate her employment and remove her from their home at all times. Indeed, after benefiting from Ms. Mbome's services for approximately eight years, in May 2016, when her services were no longer needed, the Njies bought Ms. Mbome a one-way bus ticket to Maryland. Emilia Njie Dep. 181:5-11 (App. 191).

For the second element, the Njies controlled Ms. Mbome's work schedule and conditions of employment. The Njies testified that Ms. Mbome completed a variety of tasks for their benefit, including changing diapers, cooking for and feeding the children, washing and ironing the children's clothes, bathing the children, dressing the children, babysitting, putting the children to bed, washing windows, dusting, sweeping, mopping, laundry, cooking meals, washing dishes, and cleaning the children's and guest's bedrooms. Henry Njie Dep. 35:23-36:23, 46:14-47:8, 48:7-14, 48:25-49:11, 53:2-12, 56:24-58:8, 61:16-62:10 (App. 41-42, 52-56, 59-63); Emilia Njie Dep. 87:7-13, 89:5-17, 89:24-90:4, 96:14-97:3, 97:25-98:10 (App. 160-62, 164-66). Because Ms. Mbome was responsible for taking care of the children when the Njies were not home (among other times), Dr. Njie's and Ms. Njie's own schedules (work, school, etc.) necessarily dictated Ms. Mbome's childcare schedule. *See, e.g.*, Henry Njie Dep. 54:22-56:3 (App. 57-59); Emilia Njie Dep. 85:4-86:24 (App. 158-59). Ms. Njie taught Ms. Mbome how to perform household tasks, such as how to use the washing machine and how to make formula to feed the baby. *See* Emilia Njie Dep. 94:11-16, 110:11-22 (App. 163, 168). Dr. Njie also controlled Ms. Mbome's work, such as instructing Ms. Mbome to ensure the children completed their homework and informing Ms.

18

Mbome about the after-school routine the children should complete up until their bedtime.  Henry Njie Dep. 56:24-57:15  (App. 59-60).

For the third element, the Njies determined the rate and method of payment for Ms. Mbome (or lack thereof).  The Njies enticed Ms. Mbome to come to Texas to work for them by promising to build her a home on the plot of land she owned in Cameroon in exchange for her services. Mbella Dep. 44:9-13, 44:25-45:6  (App. 108-09); Emilia Njie Dep. 83:5-22  (App. 157); Mbome Dep. 82:2-20  (App. 98).  While working for the Njies, Ms. Mbome was entirely dependent on them.  Ms. Mbome relied on the Njies for housing and food, and for the occasional cash stipend. Ms. Mbome did not have a bank account and did not have money aside from what the Njies provided.  Henry Njie Dep. 31:19-33:11  (App. 37-39).[3]

As to the fourth element, while the Njies did not maintain employment records for Ms. Mbome, this element is not dispositive.   Indeed, courts have held that an employer who fails to satisfy its recordkeeping obligations cannot escape the requirements of the FLSA.  *See, e.g.*, *Campos v. Lemay*, No. 05-civ-2089, 2007 WL 1344344, at *3 (S.D.N.Y. May 7, 2007) ("Defendant's failure to keep employment records does not defeat Plaintiff's claim of employee status.").

Accordingly, the totality of the circumstances demonstrate that Ms. Mbome was an employee of the Njies.

---

[3] The Njies failed to keep records to substantiate the costs associated with housing and meals provided to Ms. Mbome, *see* Emilia Njie Dep. 121:24-122:15  (App. 173-74), and therefore cannot deduct these costs from their minimum wage obligations, *Rangel v. Newkirk*, No. A-05-CA-528-SS, 2006 WL 8432025, at *2 (W.D. Tex. June 6, 2006).  The Njies also failed to keep track of any cash provided to Ms. Mbome.  Henry Njie Dep. 31:23-33:7  (App. 37-39).

2.     Ms. Mbome engaged in activities covered by the FLSA.

Defendants cannot dispute that Ms. Mbome's employment as a domestic service employee is covered by the FLSA. In 1974, Congress amended the FLSA to extend coverage to many domestic service employees not previously subject to its minimum wage and maximum hour requirements. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007); *see also* 29 U.S.C. §202(a) ("Congress further finds that the employment of persons in domestic service in households affects commerce."); 29 U.S.C. §206(f). The Department of Labor's regulations define the term "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary)." 29 C.F.R. §552.3. The term specifically includes services performed by employees such as cooks, maids, housekeepers, nannies, laundresses, caretakers, handymen, and gardeners, among others. *Id.* There is no dispute that Ms. Mbome performed services that fall within the definition of domestic service employment, *see* Henry Njie Dep. 35:23-36:23, 46:14-47:8, 48:7-14, 48:25-49:11, 53:2-12, 56:24-58:8, 61:16-62:10 (App. 41-42, 52-56, 59-63); Emilia Njie Dep. 87:7-13, 89:5-17, 89:24-90:4, 96:14-97:3, 97:25-98:10 (App. 160-62, 164-66), and thus Ms. Mbome is covered by the FLSA. For the foregoing reasons, Ms. Mbome is entitled, as a matter of law, to summary judgment in her favor on the issue of her status as an employee of the Njies for purposes of the FLSA's minimum wage provisions. *See Campos*, 2007 WL 1344344, at *3 (granting summary judgment for plaintiff on the issue of her status as a covered employee for purposes of minimum wage under the FLSA).

**F.    Ms. Mbome is entitled to summary judgment on her quantum meruit claim (Count 11)**

The Court should grant summary judgment on Ms. Mbome's quantum meruit claim, Count 11, because each element is established by undisputed facts. To recover under a quantum-meruit claim, a plaintiff must prove that: (1) plaintiff rendered valuable services for defendant; (2)

defendant accepted the services; and (3) defendant was reasonably notified that plaintiff expected payment for the services. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018). The measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed. *Id.* at 733. Because quantum meruit is an equitable remedy, "the ultimate decision of how much, if any, equitable relief should be awarded, must be determined by the trial court." *Id.* at 741 (quoting *Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

There is no dispute that Ms. Mbome rendered childcare and housekeeping services for Defendants, and that Defendants accepted those services. Henry Njie Dep. 35:23-36:23, 46:14-47:8, 48:7-14, 48:25-49:11, 53:2-12, 56:24-58:8, 61:16-62:10 (App. 41-42, 52-56, 59-63); Emilia Njie Dep. 87:7-13, 89:5-17, 89:24-90:4, 96:14-97:3, 97:25-98:10 (App. 160-62, 164-66); Ex. F, RFA No. 2-3 (App. 26). The undisputed material facts also show that Defendants knew Ms. Mbome expected to be paid for her services.[4] *See* Henry Njie Dep. 140:22-141:21 (App. 75-76); Mbella Dep. 44:3-45:6, 82:14-83:20 (App. 108-09, 115-16); Emilia Njie Dep. 80:11-82:20, 85:4-21 (App. 154-56, 158). Indeed, Defendants testified that the Njies built a house in Cameroon and that the Njies suggested Ms. Mbome should accept it for her services. Henry Njie Dep. 147:15-148:23, 150:6-23 (App. 77-79); Mbella Dep. 99:5-13; 101:9-102:8 (App. 117-19); Emilia Njie Dep. 85:4-21, 142:16-144:25 (App. 158, 179-81). However, the house built by the Njies was worthless to Ms. Mbome because it was not built on Ms. Mbome's property and the Njies would not give Ms. Mbome title to the house or property. Mbome Aff. ¶¶ 16-17 (App. 6).

---

[4] Although Dr. Njie testified in his deposition that he came to believe Ms. Mbome did not expect compensation for her services, Dr. Njie testified he came to this understanding based on a conversation with his wife—not Ms. Mbome. Henry Njie Dep. 44:4-45:24 (App. 50-51). Ms. Mbome did not tell Dr. Njie she was not expecting compensation, and Dr. Njie even testified he believed Ms. Mbome should be compensated. *Id.*

The Court should award equitable relief to Ms. Mbome for the value of services she provided to the Njies from 2008-2016. The amount awarded should be no less than the value of the house the Njies built in Cameroon but refused to give to Ms. Mbome. Ms. Mbome requests the opportunity to prove additional damages at trial based on the value of her services provided to the Njies.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Ms. Mbome respectfully requests that the Court grant her motion for partial summary judgment and award the following relief:

a.  An order granting Ms. Mbome partial summary judgment as to Defendants' liability on Count 1 – Violation of the TVPRA, Forced Labor;

b.  An order granting Ms. Mbome partial summary judgment as to Defendants' liability on Count 2 – Violation of the TVPRA, Trafficking;

c.  An order granting Ms. Mbome partial summary judgment as to Defendants' liability on Count Four – Violation of the TVPRA, Conspiracy;

d.  An order granting Ms. Mbome partial summary judgment as to Count Six – FLSA, Failure to Pay Wages, more specifically, an order entering a finding that Ms. Mbome was an employee of Defendants Emilia and Henry Njie for purposes of the minimum wage requirements under the FLSA; and

e.  An order granting Ms. Mbome partial summary judgment as to Defendants' liability on Count Eleven – Quantum Meruit.

Dated: February 3, 2020

Respectfully submitted,

By: /s/ *Matthew V. Lloyd*
Matthew V. Lloyd (TX Bar No. 24083404)
mvlloyd@akingump.com
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: 214-969-2800
Facsimile: 214-969-4343

Corey W. Roush (DC Bar No. 466337)
Melissa D. Whitaker (DC Bar No. 1028815)
(Admitted *Pro Hac Vice*)
croush@akingump.com
mwhitaker@akingump.com
Akin Gump Strauss Hauer & Feld LLP
2001 K Street N.W.
Washington, D.C. 20006
Telephone: 202-887-4000
Facsimile: 202-887-4288

Courtney L. Stahl (TX Bar No. 24088463)
cstahl@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002
Telephone: 713-220-5800
Facsimile: 713-236-0822

*Attorneys for Plaintiff Bridget Namondo Mbome*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2020, I served all Parties of record in accordance with the Federal Rules of Civil Procedure 5(b)(2).

/s/ *Matthew V. Lloyd*
Matthew V. Lloyd